## SAVELL v. SOUTHERN RY. CO.
### No. 8571.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1937.

378

Frank M. Oliver, of Savannah, Ga., and Hal M. Smith, of Eastman, Ga., for appellant.

W. S. Mann, of McRae, Ga., and Rembert Marshall, of Atlanta, Ga., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, F. H. Savell, a citizen of Georgia, brought this suit against the Southern Railway Company, a citizen of Virginia, to recover damages exceeding $30,000 for personal injuries, suffered while a passenger on a train of said railroad, and joined Andrew Varn, a citizen of Georgia, the engineer of the train, as a party defendant. A petition to remove, on the ground that the case presented a separable controversy, was denied by the state court. Thereafter, the railroad filed general and special demurrers and a plea and answer. The demurrers were overruled and defendant took an exception pendente lite. When the case was called for trial, appellant suggested the death of Varn and elected to proceed against the railroad alone. On renewal of the application for removal it was granted. After removal to the federal court, appellant amended his petition. Thereafter, the railroad moved for a review of the judgment of the state court overruling the demurrers and for the setting aside of that judgment; and renewed the demurrers. The federal court set aside the judgment of the state court, sustained the demurrers, and dismissed the suit. Error is assigned to this action of the court.

In substance, the petition as amended alleges: Appellant boarded the train at Jesup, Ga., as a passenger, bound for Macon, Ga., on May 9, 1935, at 11:30 p. m. The train carried three sleepers, a white day coach and a colored day coach, all vestibuled. While riding in the white day coach he became nauseated, shortly after leaving Jesup, and went into the toilet to vomit. He then went to the smoking room, and while sitting there, with his head in his hands, the flagman of the train came to the door and asked where he was going. He replied that he was bound for Macon and was sick, and that if he could get a cup of coffee before reaching Macon he thought it might help. The brakeman made some reply, which he did not understand. Shortly thereafter he again became nauseated. He went to the toilet, but found it occupied and locked. Later he went through the car towards the rear, seeking a place where he could relieve himself without soiling the car and without being observed by the other passengers. The train was slowing down for a stop at Eastman. The door leading onto the rear platform was open and the vestibule door on the left-hand side, which was on the side away from the station, was also open. When the train stopped he stepped down to the ground through the open door of the vestibule and again vomited. He then got on the lower back step of the car, on the side away from the station, grasping the handrail on the end of the coach with his right hand and with his left hand on the handrail of the vestibule at the end of the steps. Believing it was necessary for him to vomit a third time, he was holding his head over his right arm so that he could vomit on the ground. Each hand was grasping an end hold firmly, with the weight of his body resting mostly on his left foot on the bottom step. While he was so standing, the engineer started the train forward with a sudden, unnecessary, unusual, and violent jolt, with the result that he was taken entirely by surprise, his feet were jerked from the steps, his hands were jolted loose from his hold on the hand rails, and he was thrown to the ground. In falling his left foot was thrown across the rail. The back wheel of the coach from which he was thrown passed over his left foot and crushed it so badly that shortly thereafter it had to be amputated, about five inches above the ankle.

It is not disputed that the case was properly removed and jurisdiction vested in the federal court. However, appellant contends that the federal court took the case up where the state court left it off, citing Duncan v. Gegan, 101 U.S. 810, 25 L.Ed. 875, and other cases to the same effect; that the state court was without power to reopen the judgment overruling the demurrers; that the said judgments could be set aside only on appeal; that by removal defendant had waived the right of appeal and the judgment had become the law of the

case and final, citing Hawkins v. Studdard, 132 Ga. 265, 63 S.E. 852, 131 Am.St.Rep. 190, and Bean v. Barron, 176 Ga. 285, 168 S.E. 259, and that therefore the federal court was without power to reopen and set aside the judgment of the state court overruling the demurrers and to thereafter sustain them.

The rule that on removal the federal court takes the case up where the state court left it off was formulated when removal could be effected by either party at any time before final judgment. It has very little application under the present law. When a case is removed the federal court takes it as though everything done in the state court had in fact been done in the federal court. 28 U.S.C.A. § 81; Cain v. Commercial Publishing Co., 232 U.S. 124, 34 S. Ct. 284, 58 L.Ed. 534. The federal court is not bound by any rule of state practice that is in conflict with a federal statute. Ex parte Fisk, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117. In the absence of statute, the law of the case as applied in the state court is but a rule of practice and not binding on the federal court. Remington v. Central Pacific Railroad Co., 198 U.S. 95, 25 S.Ct. 577, 49 L.Ed. 959; Messinger v. Anderson, 225 U.S. 436, 32 S.Ct. 739, 56 L.Ed. 1152. Of course, if a judgment finally adjudicating rights of the parties has been rendered in the state court before removal, it has the same effect as if rendered in the federal court, but it has no greater force. In federal courts a judgment overruling a demurrer is not final nor appealable. The ending of the term does not affect pending cases in federal courts. 28 U.S.C.A. § 12. Until final judgment the trial judge is at liberty to reconsider the question, and, in the exercise of discretion, change his decision. This is a general rule of practice in all courts of record, and the right to change a judgment within the term is recognized in Georgia. Butters Mfg. Co. v. Sims, 178 Ga. 775, 174 S.E. 623. A judgment overruling a demurrer is not necessarily final under the practice in Georgia. By the provisions of the Georgia Code 1933, §§ 6-701 and 6-905, a judgment overruling a demurrer, which if sustained would have terminated the case, may be immediately appealed or, by taking an exception pendente lite, the right of review may be preserved to be considered on appeal from a final decision in the case. In Hawkins v. Studdard it was held that the overruling of a demurrer was not good ground for a new trial. In Bean v. Barron the defendant had not taken an exception pendent lite. These cases are not in point. The judgment of the state court overruling the demurrers had not become final before removal. It follows that the District Court had jurisdiction and authority to reopen that judgment and enter such judgment thereafter as in his discretion seemed proper.

Conceding that the railroad was bound to exercise the highest degree of care for the safety of appellant, it was not an insurer and appellant was required to exercise ordinary care for his own safety. From the allegations of the petition the following facts must be assumed to be true. Appellant was in a safe place inside the car and voluntarily put himself in a place of danger. He was not obliged to leave the train to relieve himself of his nausea. He should have known that the toilet in his car was only temporarily occupied, but he made no effort to make use of it again, nor did he attempt to find an unoccupied toilet in another car of the train, to all of which he had access in case of necessity. He was destined to Macon and was not expected to leave the train when it stopped at Eastman. No facts are alleged that would tend to charge the train crew with knowledge that he intended to leave the car at Eastman, had done so, or was standing on the steps when it was time for the train to move. Had he remained on the train, he would not have been injured. In these circumstances it was not actionable negligence to start the train with a violent jerk. The petition fails to state a good cause of action. Hutchinson, Carriers (3d Ed.) § 1195; Griggs v. Erie R. Co. (C.C.A.) 71 F.2d 966; Lennon v. Canadian Pac. Ry. Co. (C.C.A.) 192 F. 111; Chicago Great Western Ry. Co. v. Mohaupt (C.C.A.) 162 F. 665, 18 L.R.A. (N.S.) 760; Illinois Central R. Co. v. Warren (C.C.A.) 149 F. 658.

The record presents no reversible error. Affirmed.